1    **BURSOR & FISHER, P.A.**
      Scott A. Bursor (State Bar No. 276006)
2    L. Timothy Fisher (State Bar No. 191626)
      Annick M. Persinger (State Bar No. 272996)
3    Yeremey Krivoshey (State Bar No. 295032)
      1990 North California Boulevard, Suite 940
4    Walnut Creek, CA 94596
      Telephone: (925) 300-4455
5    Facsimile: (925) 407-2700
      E-Mail: scott@bursor.com
6            ltfisher@bursor.com
              apersinger@bursor.com
7            ykrivoshey@bursor.com

8    *Attorneys for Plaintiff*

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12

13   JUSTIN DARISSE, individually and on behalf      Case No. _____
      of all others similarly situated,
14
                                  Plaintiff,          **CLASS ACTION COMPLAINT**
15
            v.                                        **JURY TRIAL DEMANDED**
16
      NEST LABS, INC.,
17
                                  Defendant.
18

19

20

21

22

23

24

25

26

27

28
      ───────────────────────────────────────────────
      CLASS ACTION COMPLAINT

Plaintiff Justin Darisse ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Nest Labs, Inc. Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This a class action against Defendant Nest Labs, Inc. ("Defendant") for using false and misleading advertising, in website, print, and point-of sale promotional materials, as well as on product packaging, to promote and sell the Nest Learning Thermostat ("Nest").

2. Nest is a wireless thermostat that can be remotely controlled from smartphones and tablets. In 2011, Defendant launched Nest, a sleek "new generation" thermostat that was supposed to revolutionize thermostats, not unlike the iPod revolutionized music playing devices.[1] But Defendant released a fancy, overpriced gadget (pictured below), which, while aesthetically "cool" like the iPod, fails at even the most basic function of a thermostat: accurately gauging and controlling temperature.



3. Defendant promises that Nest will provide energy and cost savings that Nest does not provide. In fact, Nest *increases* energy use and costs because, contrary to Defendant's representation that Nest uses "multiple temperature sensors to determine the ambient temperature

---

[1] Nest Labs, Inc. was founded by Matt Rogers, who was "responsible for iPod software development at Apple, from concept to production," and Tony Fadell, who "led the team that created the first 18 generations of the iPod and the first three generations of the iPhone." *See* https://nest.com/about/

with a high degree of accuracy," customer reports and Defendant's own admissions show that Nest is so defective that it cannot correctly gauge ambient temperature.

4. Nest's base and faceplate heat up, which causes Nest's temperature reading to be from two to ten degrees higher than the actual ambient temperature in the surrounding room. This defect prevents the thermostat from working properly. As a result, Nest users do not experience the advertised energy savings.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and because members of the proposed class are citizens of a state different from the state of Defendant.

6. This Court has general jurisdiction over Defendant because Defendant is headquartered in California. Further, Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged mislabeling, misbranding, and marketing practices have been disseminated and committed in this District and because Defendant is headquartered in this District.

## THE PARTIES

8. Plaintiff Justin Darisse is a citizen of Maryland, residing in Gaithersburg. In the fall of 2013, Plaintiff purchased Defendant's Nest Thermostat from Amazon.com for approximately $249.99. Prior to purchasing Nest, Mr. Darisse reviewed Defendant's marketing material and representations online, including that Nest provides energy and cost savings, as well as accurate temperature readings. Based on those representations, Mr. Darisse purchased Nest at a substantial price premium compared to traditional thermostats. Shortly thereafter, Plaintiff received Nest in its common packaging. Plaintiff read and relied on Defendant's representations found on the Product packaging before installing the Nest Thermostat. Plaintiff's Nest Thermostat packaging contained instructions to visit Defendant's website to check compatibility before installing the Product. Following Defendant's instructions, Plaintiff visited Defendant's website to check compatibility

and watched the instructional video. Mr. Darisse would not have purchased or installed Nest if he had known the truth about Defendant's representations concerning Nest. Instead, he would have continued to use his traditional Honeywell Thermostat that retails for around $30.00.

9.      Defendant Nest Labs, Inc. is a Delaware company with its headquarters and principal place of business located at 900 Hansen Way, Palo Alto, California 94304.

10.      Defendant markets and sells its Nest "Learning Thermostat" widely throughout California, and nationwide. Defendant has manufactured, marketed, and sold Nest using the deceptive, false, and misleading claims described herein since at least 2011.

11.      Defendant distributes Nest to several leading retailers including Amazon, EBay, Best Buy, Apple, Lowes, and Home Depot. Due to Nest's purported accuracy, and cost and energy saving capabilities, Nest sells for a retail price of $249 on Defendant's website[2] and for similar prices through Defendant's various distributors. The $249 purchase price reflects a substantial price premium over traditional thermostats.[3]

<u>**FACTS COMMON TO ALL CAUSES OF ACTION**</u>

**A.      Defendant's False and Misleading Marketing of Nest**

12.      Defendant falsely markets Nest as an easy-to-use, self-programming device that "saves energy" and decreases utility bills. Defendant's marketing conveys a simple message: Nest saves money.

13.      Defendant misrepresents that Nest's "sensors are designed to be highly accurate and react to changes in the ambient temperature more readily than most thermostats"[4] and that "[t]hree temperature sensors track your home's temperature and how quickly it changes."[5] For example, on its website, Defendant represents that:

> Nest uses multiple temperature sensors to determine the ambient temperature with a high degree of accuracy. The Nest Thermostat's sensors are tuned to be most useful for keeping

---

[2] https://store.nest.com/product/thermostat/

[3] For example, a Honeywell Digital Programmable Thermostat is available for $32.87. *See, e.g.*, http://www.zorotools.com/g/00055005/k-

[4] *See, e.g.*, http://support.nest.com/article/Why-does-the-temperature-Nest-detects-seem-different-than-my-old-thermostat

[5] https://nest.com/thermostat/inside-and-out/

your home consistently comfortable. We found that responding rapidly to temperature changes gives your Nest Thermostat the most accurate data to work from.

….

Nest Thermostat's sensors are designed to be highly accurate and react to changes in the ambient temperature more readily than most thermostats.[6]

14.     Visitors to the Nest Website find rotating images of a Nest next to energy-saving slogans. As shown below, Defendant claims that Nest "Manages half your home's energy":



15.     Defendant further claims that Nest "Helps you save energy":



---

[6] http://support.nest.com/article/Why-does-the-temperature-Nest-detects-seem-different-than-my-old-thermostat

16.     The images provide a link so that potential customers can "Take a Tour with Nest." The Nest "Tour" begins with an image of a plain traditional thermostat next to the tag-line "We didn't think thermostats mattered either":



17.     The video then goes on to explain why, according to Defendant, thermostats *do matter* - because "they control half your energy bill":



18.     Because thermostats matter to your energy bill, in the next frame of the video, Defendant introduces the Nest Learning Thermostat:



19.     A Nest then replaces the drab traditional thermostat on the wall, and the video explains that Nest "won't waste energy when you're out":



20.     Defendant's website also prominently states that:  "We didn't think thermostats mattered either.  Until we found out they control half of your home's energy.  That's more than appliances, lighting, TVs, computers and stereos combined.  THE PROBLEM: If your thermostat isn't programmed, you could be wasting around $173 a year.  But many of us don't program our thermostats – they're just too complicated.  What if you did?"

21.     Next to Defendant's energy saving message, the website provides an interactive image of a balancing scale to illustrate Nest's energy saving capability.  On the left half of the scale there are images of a droplet of water, a refrigerator, a light bulb, a computer, and a washing machine.  On the right half of the scale there is an image of a traditional thermostat.  Above the traditional thermostat, Defendant includes a large circle with the emboldened phrase: "Half of your home's energy bill."



22.     Upon dragging the cursor across the image, it transforms.  A Nest replaces the traditional thermostat, a substantial portion of the "energy bill" circle falls away, and the statement "A correctly programmed thermostat can save about 20% on your heating and cooling bill" appears.



23.     After outlining the so-called home-energy management "problem," Defendant provides the solution:  "So we made it simple.  Nest saves energy.  Automatically."



24.    To explain how "Nest saves energy.  Automatically," Defendant represents that the Nest "Leaf appears when you choose a temperature that will save energy.  Changing the temp just one degree can save up to 5% on your energy use."



1     25.     To depict "How Nest helps you save," Defendant also employs illustrative examples
2     of families who would realize energy savings by using Nest.  For example, Defendant introduces
3     "Tina and Joe" who are "retired in Phoenix in a 2,000 sq. ft. home," and whose "grandkids often
4     come over in the afternoons."  Nest represents that Tina and Joe could realize "22% Savings."
5     Defendant further explains "Auto-Schedule" helped them save: "Joe looked for the Nest Leaf and
6     turned the temp up to 75°F/25°C instead of their usual 73°F/23°C.  Auto-Schedule learned the
7     habit and helps them save."



26.     If after reviewing the above images a potential customer remains unconvinced, Nest further provides an "Energy Savings Video." The video begins: "Most of us will spend around $30,000 heating and cooling our homes during the life of our furnace or air conditioner."



27.     As an image of numerous hands repeatedly adjusting a basic thermostat materializes, the video continues: "In the past there weren't any easy ways to lower that amount. You could adjust your thermostat about 1500 times a year …



28. Then, a terrifically complicated looking programmable thermostat appears, and the video explains that, in the past, the only other alternative to 1500 adjustments was to "battle with a complicated programmable thermostat."



29. Finally, at the end of the video, a sleek Nest appears in place of the tedious alternatives of the past, and the video elucidates: "Now there is the Nest Learning Thermostat which is full of tools to save energy automatically."



30.    During the class period, Defendant similarly represented that:

We didn't think thermostats mattered either.  Until we found out they control half of your home's energy.  That's more than appliances, lighting, TVs, computers and stereos combined.  THE PROBLEM:  89% of programmable thermostats waste energy – about $173 a year, on average.  They're so complicated that most people don't bother to program them.  …. So we made it simple.  **Nest saves energy**. **Automatically**. (emphasis in original).

31.    Defendant has additionally promised on its website and in other marketing materials that Nest effectively saves energy and decreases heating and cooling bills.  For example, Defendant has represented:

- [Nest] can automatically lower air-conditioning costs up to 30% [and] cuts AC runtime up to 30%;

- Teach it well and Nest can lower your heating and cooling bills up to 20%;

- Most thermostats waste 20% of your heating and cooling bill. Nest stops the waste;

- Nest is paying for itself.  Auto-Schedule makes it easy to create an energy efficient schedule that can help you save up to 20% on your heating and cooling bills.  All Nest's features combined can get you even bigger savings; and

- Save energy. Make money.[7]

32.    Similarly, Nest's packaging reads:

Learning Thermostat™

Programs itself.

**Saves energy**. (emphasis added)



---

[7] http://nest.com/saving-energy/

**B.     Nest Does Not Function as Advertised**

33.     Contrary to Defendant's colorful advertising campaign, Nest does not accurately read temperature and, as a result, does not save energy or decrease energy bills.  In fact, Nest *increases costs* because Nest heats up, which causes Nest's temperature reading to be from two to ten degrees higher than the actual ambient temperature in the surrounding room.  Indeed, as Defendant explains: "Changing the temp just one degree can save up to 5% on your energy use."[8] Thus, according to Defendant's reasoning, an inaccurate temperature reading of two to ten degrees could increase your energy use from 10% to 50%.

34.     Nest is incapable of accurately gauging the temperature in the surrounding room. The very features that Defendant claims set Nest apart from other thermostats, such as Nest's WiFi connectivity, bright LCD screen 320x320px display, built in rechargeable lithion ion battery, multiple-sensors, and sensor window, cause Nest to heat up.  Once it heats up, Nest reports that the temperature is warmer than the real temperature in the room.  Nest thereafter keeps the air conditioner running longer than necessary because it is incapable of accurately gauging the temperature.

35.     The following example demonstrates the impact of Nest's WiFi connectivity on Nest's temperature readings.  On January 26, 2014, a Nest user reported on the Nest Community Website that her "Nest was consistently reading 2 degrees above my digital room thermometer. My Nest is not placed where sunlight or other light could impact it.  I find the two degree difference annoying but based on user comments it appears this is normal for the Nest."  Then she noticed that her Nest was "4 to 6 degrees" above her digital room thermometer.  To resolve the problem, she "tried turning the unit off for a while and then turning it back on but the significant temperature difference persisted."  She then "disconnected the Nest from [her] WiFi connection. Within about an hour the temperature went back to the "normal 2 degree difference."  But as soon as she "re-established the WiFi connection, [the] larger temperature difference returned."  The review concluded:  "I Think this unacceptable for the top of the price point WiFi thermostat.  I would never purchase this brand again."

---

[8] http://nest.com/saving-energy/

36.     Defendant's depiction of "Tina and Joe," whose "Auto-Schedule" helped them save money and energy demonstrates how Nest's inaccurate temperature readings eradicate energy savings.  As mentioned above, Defendant states: "Joe looked for the Nest Leaf and turned the temp up to 75°F/25°C instead of their usual 73°F/23°C.  Auto-Schedule learned the habit and helps them save."  If the current temperature in Tina and Joe's house is 80 degrees and Joe sets the temperature to 75 degrees instead of their usual 73 degrees, Nest's inaccurate temperature readings will keep the air conditioner running even when the actual ambient temperature in the room has reached 75 degrees.  Since the air conditioner would remain on, the actual temperature in the room would still be Tina and Joe's usual 73 degrees.  As a result, none of the purported savings would be realized.

   **C.     Customer Reports Show That Nest Inaccurately Reads Temperature and That Defendant's Cost, Energy, and Accurate Temperature Representations Are False and Misleading**

37.     An incredible number of Nest customers have reported identical experiences of having Nest heat up, inaccurate temperature readings, and the air conditioner running even when no longer needed, resulting in cost increases and excessive energy use.[9]  The following are just a few examples of customers reporting inaccurate temperature readings and increased energy use:

In April 2013, one customer wrote on the Nest website:

> **I taped two different digital thermometers next to Nest and waited a day for temps to settle … Nest reads at least 2 degrees warmer than the calibrated thermometers….  So I feel this poor temperature calibration provides a false sense of energy savings.  Nest needs to provide better temperature calibration….**
>
> **I just spoke with Nest 2nd level support.  He confirms for me that Nest engineers feel that temperature calibration (compared to another thermometer/thermostat) might be within 4 degrees difference ….  So although I measured a range of temp differences with Nest being 1.6 to 2.3 degrees higher than two different digital thermometers, this is "insignificant," to quote Nest.  To paraphrase, the difference might be due to what I call self-heating from the internal WiFi operation, and in the way in which Nest calculates temperature.  So I see that by design, Nest's engineers expect that Nest will: 1. Never show a temperature accurate to a digital thermometer/thermostat (within 4**

―――――――――――――――――
[9] A simple use of the search term "temperature" on Defendant's "Nest Community" webpage, where customers can post comments and questions, results in dozens of separate discussions concerning the inaccuracy of Nest Thermostats' temperature readings.  *See* https://community.nest.com/search.jspa?q=temperature

**degrees; 2. Temperature reading will vary depending on self-heating from WiFi, display use**…[10] (emphasis added).

On May 27, 2013, another customer wrote on the Nest website:

> **Nest thinks temp is about 3 degrees warmer than it is, and the A/C seems to run more often than it used to when set on 74**.  I checked with an IR laser thermostat throughout the house and it consistently read 71, but the Nest was measuring 74. …. Curiously, **when I aimed the laser directly on the Nest faceplate, it measured 74 while the surrounding wall measured 71**.  **I think the electronics within the Nest are actually heating the inside of it up 3 degrees higher than ambient.**  And my Nests are not in the sunlight. Definitely need temperature calibration." (emphasis added).[11]

On July 25, 2013, another customer wrote on the Nest website:

> I installed a Nest last week and I was initially pleased with its performance.  Last night however, I noticed that the room seemed hot, so I walked over to the Nest and **it was showing that the temperature was 96 degrees, and it was trying to cool to 78 deg.  The actual room temperature was close to 82 degrees**…(emphasis added).[12]

On November 26, 2013, another customer wrote on the Nest website:

> I installed mine about November 15th, 2013.  It has the same issue - indicating a temperature that's consistently a little more than two degrees higher than actual room temperature.  That's irritating for an expensive, state-of-the-art device.  More so if the supplier does not consider the problem significant.  The primary purpose of this device depends upon ACCURATE TEMPERATURE REGULATION.

On December 14, 2013, another customer wrote on the Nest website:

> Wow - I am not impressed with NEST.  **I had the same problem with it reading close to 10F higher. The base plate was definitely warm to the touch** ….  I also called support before installation to check compatibility and I was told it would be fine. (emphasis added).

On May 18, 2013, another customer wrote on Amazon.com:

> **There seems to be a major design flaw in this product.  It fails at the most basic level of thermostat functionality, which is the measuring of Room Temperature!**
>
> **It always shows the room temp 4-6 degrees warmer than it really is!!**  It is also very slow in changing.  For example, I had 3 thermostats side by side, one of which was the Nest.  I left the doors/windows open, the other 2 OLD thermostats reached 62 degrees simultaneously with in about 5-10 minutes.  The Nest was still showing 74 an hour later!!! That's grossly wrong!!!
>
> I tried 2 Nest thermostats and both had the same problem even after being on Tech Support line for 3 days, downloading the latest firmware, resetting to factory defaults and disabling wifi.  It still reads the temp 4-6 degrees warmer.

---

[10] https://community.nest.com
[11] https://community.nest.com
[12] https://community.nest.com/message/8163#8163

Finally the Tech Support lady said, it is what it is, and you can return it if you can't live with it!! I asked if this is something they are working on? She couldn't even confirm that. It is a shame such an ambitious piece of technology can not even read the temp correctly! How can you use a thermostat that thinks the room is sometimes 8 degrees hotter than it really is? …. (emphasis added).

On July 30, 2013, another customer wrote on Amazon.com:

The [Nest] wiring base was very warm to touch, not good. Then [Nest support] tell[s] me to try to return it to Amazon, but it's after the return window by 10 days. ….

**Apparently this is a known issue internally Nest corporate and engineering, they are investigating, but there is no time frame for the fix,** and likely a new base design would be the fix. They are not at all clear as to how they will address this publicly (replacing existing bases automatically, case-by-case, free, charge (which would be ludicrous if they charged)).

On October 22, 2012, another customer wrote on Amazon.com:

I bought the second generation Nest from Lowes the day it was released. I verified the compatibility on Nest's website. Installation was a breeze and so was the initial setup. Everything was smooth and it started to cool my house as expected.

**Five days later I noticed that the temperature reading on Nest was a tad higher than the actual room temperature. When my room was at 78 degrees Nest showed 82. A few hours later the reading went to 83 and kept increasing. I felt the warmness on the surface of the (beautiful) display so I took the unit off the base from the wall. The back side of Nest was hot.** It felt like it's been doing some heavy duty computations.[13] (emphasis added).[14]

### D. Defendant Knows, and Certainly Should Know, of Nest's Defects

38. Defendant knows about Nest's temperature reading defect. Indeed, many of the reviews above were posted directly on the Nest website. Additionally, as set forth above, unhappy customers report that Defendant knows about the defects:

a. I just spoke with Nest 2nd level support. He confirms for me that Nest engineers feel that temperature calibration (compared to another thermometer/thermostat) might be within 4 degrees difference;

b. [E]ven after being on Tech Support line for 3 days, downloading the latest firmware, resetting to factory defaults and disabling wifi. It still reads the temp 4-6 degrees warmer. Finally the Tech Support lady said, it is what it is, and you can return it if you can't live with it!! I asked if this is something they are working on? She couldn't even confirm that.; and

c. Apparently this is a known issue internally Nest corporate and engineering, they are investigating, but there is no time frame for the fix, and likely a new base design would be the fix. They are not at all clear as to how they will address this publicly

---

[13] https://community.nest.com
[14] http://www.Amazon.com/Nest-Learning-Thermostat-Generation-T200577/product-reviews/B009GDHYPQ/ref=dp_top_cm_cr_acr_txt?showViewpoints=1

(replacing existing bases automatically, case-by-case, free, charge (which would be ludicrous if they charged)).

39.     Further, Defendant has responded to complaints about the problem both on its own website and on Amazon.com.  The following exchange (one of many) that took place on Amazon.com between an unhappy customer and the "Nest Support-Manufacturer" exemplifies Defendant's knowledge of the problem:

**Customer**, December 28, 2013:

> We installed [Nest] after getting it for Christmas.  The temperature is 9 degrees off, and gets even more off the longer we leave it on.  Yes it looks nice, but if you want something in your house that actually regulates temperature, go with a reliable thermostat company.

**Nest**, December 30, 2013:

> Comparing the temperature the Nest Thermostat reads to other thermostats and thermometers is tricky.  The way thermostats calculate temperature is often different, and seemingly small differences in the environment can dramatically affect the temperature your thermostat shows.  We've put together some details on why the number might seem different than what you would expect at the link below:
> http://support.nest.com/article/Why-does-the-temperature-Nest-detects-seem-different-than-my-old-thermostat ….

**Customer**, December 30, 2013:

>  We installed two nests, both from Amazon, both did the same thing.  And I understand that some thermostats read differently, but when you have thermostats and plain thermometers reading the same, it is different.  I read the crap you posted on your website, it didn't help.
> ….
> The crap is already in a box on its way back to Amazon to be refunded.  There was such a long wait for phone support and no reply to an email.  Your support is just about as good as your thermostats are at reading temperatures.

40.     The link that Defendant provided to the customer above directs users to a "Nest Support" page entitled "Why does the temperature the Nest Learning Thermostat detects seem different than my old thermostat?"  But Defendant's so-called explanation merely exculpates Defendant, and blames Nest-victims for Defendant's dysfunctional thermostat.  For instance, Defendant claims that the temperature "variations" may be due to "Manual Thermostat Adjustments" because "[w]hen making many adjustments on your Nest Thermostat, the warmth of your hand may cause the Nest Thermostat's sensors to raise the ambient temperature displayed." [15] Thus, according to Defendant, the momentary adjustment by hand is causing the Nest unit to heat

---

[15] http://support.nest.com/article/Why-does-the-temperature-Nest-detects-seem-different-than-my-old-thermostat

up. But if a brush against a human hand can cause Nest to heat up, surely warmth generated by the components *inside* Nest are similarly able to cause the temperature gauge to display an inaccurately high reading.

41.     On the same page, Defendant also suggests that "Room Placement" may be the cause of the temperature "variations":

> After replacing your old thermostat with a Nest Thermostat, your previous thermostat may display a different ambient temperature than your Nest. In many cases, this is because your previous thermostat is no longer installed on your wall. Surprisingly, the air temperature can vary dramatically between two areas of the same room that are separated by only a few feet. To properly compare your old thermostat to the Nest Thermostat, hold your old thermostat up to the wall within a few inches to the right or left of the Nest Thermostat. It is important to make sure that both thermostats are the same height from the floor. Be sure to hold your old thermostat in a way that won't cause its sensors to detect the warmth of your hand. After several minutes your old thermostat should adjust its detected temperature.

But, as set forth in the examples above, customers have done just as Defendant instructs and the temperature reading is still off:

> a.     I had 3 thermostats side by side, one of which was the Nest. I left the doors/windows open, the other 2 OLD thermostats reached 62 degrees simultaneously with in about 5-10 minutes. The Nest was still showing 74 an hour later!!! That's grossly wrong!!!
>
> b.     [W]hen I aimed the [IR] laser directly on the Nest faceplate, it measured 74 while the surrounding wall measured 71. I think the electronics within the Nest are actually heating the inside of it up 3 degrees higher than ambient. And my Nests are not in the sunlight.

42.     Finally, Defendant knew or should have known about the problems with Nest's temperature reading based on pre-market testing. Testing a thermostats' temperature reading before promising that it is "accurate" and will result in energy savings is standard industry practice.

### E.     The NAD Recommended that Defendant Discontinue Advertising Claims

43.     Defendant's false and misleading representations concerning Nest have been condemned by the National Advertising Division of the Council of Better Business Bureaus ("NAD"), an investigative unit of the advertising industry's self-regulatory system. On June 20, 2013, the NAD took the extraordinary step of recommending that Defendant stop making a number of inaccurate and misleading claims about Nest thermostats. For example, the NAD recommended

that Defendant stop representing that its Nest Thermostats "cut AC runtime up to 30%."[16] Following review of Defendant's evidence, the NAD also urged Defendant to discontinue its unsupported specifically quantified claims such as "89% of other programmable thermostats are not programed because they're so complicated that most people don't bother to program them" and "other thermostats waste energy."[17]

## CLASS ACTION ALLEGATIONS

44.    Plaintiff seeks to represent a class defined as all persons in the United States who purchased Nest Thermostats for personal or household use, excluding those who purchased Nest Thermostats for resale (hereafter, the "Class").

45.    Defendant sells hundreds of thousands of Nest Thermostats. It is estimated that Defendant sells 100,000 Nest Thermostats per month at roughly $250 per unit.[18] Nest Thermostats are available in major retail stores nationwide and online. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant and third party retailers and vendors.

46.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

a.    Whether Defendant breached an express warranty made to Plaintiff and the Class;

b.    Whether Defendant breached an implied warranty made to Plaintiff and the Class;

c.    Whether Defendant advertised or marketed Nest Thermostats in a way that was false or misleading;

d.    Whether Defendant's conduct was false, misleading, or reasonably likely to deceive ordinary consumers;

---

[16] http://www.asrcreviews.org/2013/06/nad-recommends-nest-labs-modify-discontinue-certain-advertising-claims-for-nest-programmable-thermostats-claims-challenged-by-honeywell/
[17] http://www.asrcreviews.org/2013/06/nad-recommends-nest-labs-modify-discontinue-certain-advertising-claims-for-nest-programmable-thermostats-claims-challenged-by-honeywell/
[18] http://www.businessinsider.com/nest-revenue-2014-1

e. Whether Class members have been injured by Defendant's conduct;

f. Whether Class members suffered an ascertainable loss as a result of Defendant's misrepresentations; and

g. Whether Class members are entitled to damages, restitution, injunctive relief, and/or monetary relief and, if so, the amount and nature of such relief;

h. Whether Defendant violated California Civil Code §§ 1750, *et seq.*;

i. Whether Defendant violated California Business & Professions Code §§ 17200, *et seq.*; and

j. Whether Defendant violated California Business & Professions Code §§ 17500, *et seq.*

47. The claims of the named Plaintiff are typical of the claims of the Class in that Plaintiff (a) was exposed to Defendant's false and misleading packaging, marketing, and promotion of Nest Thermostats; (b) relied on Defendant's misrepresentations; and (c) suffered a loss as a result of his purchase. Each Class member was subjected to the same conduct, was harmed in the same way, and has claims for relief under the same legal theories.

48. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

49. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq.***

50.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

51.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

52.    Plaintiff and the Class members are consumers who purchased Nest for personal, family or household purposes. Plaintiff and the Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff and the Class members are not sophisticated experts with independent knowledge of thermostat design, temperature reading, energy saving, cost saving, or other characteristics of thermostats.

53.    The Nest Thermostats that Plaintiff and other Class Members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

54.    Defendant's actions, representations, and conduct have violated and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

55.    Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …." Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

56.    Defendant violated Cal. Civ. Code § 1770(a)(5) and (a)(9) by misrepresenting that Nest was capable of accurately reading temperature and providing energy and cost savings as described above. Defendant knew, or should have known, based on pre-market testing that Nest

was not capable of accurately reading temperature, and that, as a result, it would not provide energy and cost savings.

57. Plaintiff and the Class suffered injuries caused by Defendant because: (a) they would not have purchased Nest Thermostats on the same terms if the true facts were known concerning Nest's temperature readings, and Defendant's energy and cost savings representations; (b) they paid a substantial price premium compared to traditional thermostats due to Defendant's representations that Nest would accurately read temperature and provide energy and cost savings as described above; (c) they did not receive the promised energy-cost savings; and (d) Nest did not have the characteristics, uses, or benefits as promised.

58. On or about February 7, 2014, prior to filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a). Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

59. Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT II
### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

60. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

62. Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

63.     Defendant violated the "unlawful" prong of the UCL by violating the CLRA, the FAL, and by breaching its express and implied warranties as described herein.

64.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's practice of promising energy and cost savings and then delivering an exorbitantly expensive defective thermostat is of no benefit to consumers.  Defendant's conduct of selling Nest despite pre-market tests showing the inaccuracy of Nest's temperature readings, or, alternatively, Defendant's failure to test Nest before releasing it on the market offends public policy.  Further, Defendant's refusal to remedy the defect or its representations even after numerous customers have requested that Defendant do so is unscrupulous.

65.     Defendant violated the "fraudulent" prong of the UCL by making misrepresentations about Nest Thermostats, as described herein.

66.     Plaintiff and the Class members are not sophisticated experts with independent knowledge of thermostats, or how thermostats could result in energy and cost savings.  Thus, Plaintiff and the Class members acted reasonably when they purchased Defendant's products based on their belief that Defendant's representations were true.

67.     Plaintiff and the Class lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased Nest on the same terms if the true facts were known concerning the inaccuracy of Nest's temperature readings, and the falsity of Defendant's energy and cost savings representations; (b) they paid a price premium for Nest Thermostats due to Defendant's promises and representations described herein; (c) they did not receive the promised energy-cost savings; and (d) Nest Thermostats did not have the characteristics, uses, or benefits as promised.

**COUNT III**
**Violation Of California's False Advertising Law ("FAL"),**
**California Business & Professions Code §§ 17500, *et seq.***

68.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

69.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

70.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

71.     Defendant committed acts of false advertising, as defined by §§17500, *et seq.,* by making misrepresentations about Nest's accuracy and energy and cost saving capabilities as described herein.

72.     Defendant knew or should have known through the exercise of reasonable care (i.e. pre-market testing) that their representations about Nest were untrue and misleading.

73.     Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.

74.     Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because:  (a) they would not have purchased Nest on the same terms if the true facts were known concerning the inaccuracy of Nest's temperature readings, and the falsity of Defendant's energy and cost savings representations; (b) they paid a price premium for Nest Thermostats due to Defendant's promises and representations described herein; (c) they did not receive the promised energy-cost savings; and (d) Nest Thermostats did not have the characteristics, uses, or benefits as promised.

## COUNT IV
### Breach Of Express Warranty

75.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

77.     Plaintiff, and each Class member, formed a contract with Defendant at the time Plaintiff and each Class member purchased a Nest Thermostat.  The terms of the contract include the promises and affirmations of fact relating to the energy savings, cost savings, temperature accuracy and responsiveness representations on Defendant's product packaging, online, and through its marketing campaign, as described above.  Defendant's online and packaging representations became part of the basis of the bargain and are part of a contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other, and thus constituted express warranties.

78.     Defendant, as the designer, manufacturer, marketer, distributor, or seller expressly warranted, among other things, the following material terms about Nest Thermostats:

    a.   "[Nest Thermostats] can automatically lower air-conditioning costs up to 30%"

    b.   "Teach it well and Nest can lower your heating and cooling bills up to 20%"

    c.   "Most thermostats waste 20% of your heating and cooling bill. Nest stops the waste."

    d.   "Save energy. Make money."

    e.   "Nest thermostat's sensors are designed to be highly accurate and react to changes in the ambient temperature more readily than most thermostats."

79.     Defendant sold the goods to Plaintiff and the other Class members, who bought the goods from Defendant.  Plaintiff and the Class members are ordinary consumers who are not versed in the art of inspecting and judging the properties of thermostats.  Plaintiff and the Class acted reasonably based on Defendant's temperature accuracy, cost saving, and energy saving representations.

80.     Defendant breached the terms of this contract, including the express warranties described in this Count IV as well as above, because Nest (a) does not accurately read temperature; (b) does not lower air-conditioning costs up to 30%; (c) does not lower heating and cooling bills up to 20%; (d) does not stop wasting 20% of customer's heating and cooling bills; (e) does not save energy; (f) does not "make money"; (g) and was not "designed to be highly accurate and react to changes in the ambient temperature more readily than most thermostats." Therefore, the express warranties were false, misleading and deceptive. As a result of this breach, Plaintiff and the Class did not receive the goods as warranted by Defendant.

81.     Plaintiff and Class members were injured and harmed as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Nest on the same terms if the true facts were known about the purported accuracy of Nest's temperature readings, and Defendant's energy and cost savings representations; (b) they paid a price premium for Nest due to Defendant's promises described in this Count IV and above; and (c) they did not receive the promised energy-cost savings.

## COUNT V
### Breach Of The Implied Warranty Of Merchantability

82.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

83.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

84.     Defendant is and was at all relevant times a "merchant" within the meaning of the Uniform Commercial Code ("UCC"). Defendant manufactured, distributed, and marketed Nest Thermostats, which are "goods" within the meaning of the UCC. Consequently, Defendant impliedly warranted that Nest Thermostats were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, that they were of fair average quality within the description, that they were adequately labeled, and that they would conform to the promises or affirmations of fact made on their container or labels. However, each of these implied warranties

was false with respect to the goods of the kind sold to Plaintiff and members of the Class. Indeed, Defendant's thermostat is not fit for the ordinary purpose for which thermostats are used – measuring and controlling temperature.

85. Plaintiff and Class members purchased Nest Thermostats for the purpose of accurately determining and responding to ambient temperature.

86. The Nest Thermostats were not altered by Plaintiff or Class members.

87. The Nest Thermostats were defective when they left the exclusive control of Defendant.

88. Defendant knew Nest would be purchased and used by Plaintiff and Class members without additional testing. The Nest Thermostats were unfit for their ordinary purpose, and Plaintiff and Class members did not receive the goods as warranted.

89. More specifically, Defendant breached its implied warranty of merchantability to Plaintiff and the Class because the Nest Thermostats would not pass without objection in the trade because they were incapable of performing the functions that thermostats are intended to perform. They are not capable of precisely controlling the cooling and heating functions and are incapable of accurately determining and responding to the ambient temperature.

90. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members were injured because (a) they would not have purchased Nest if they had known that the products were not capable of precisely controlling the heating and cooling functions, contributing to cost and energy savings and accurately determining and/or responding to the ambient temperature; (b) they paid a price premium for the Nest Thermostats based on Defendant's warranties; (c) they did not receive the promised energy-cost savings; and (d) the Nest Thermostats did not have the characteristics, uses, or benefits as promised.

## COUNT VI
### Breach Of Implied Warranty Of Fitness For A Particular Purpose

91. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

92.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

93.     Defendant marketed, distributed, and/or sold Nest with implied warranties that it was fit for its particular purpose of contributing to energy and cost savings.

94.     At the time of purchasing Nest, Plaintiff and the Class members intended to use Nest to realize energy and cost savings.

95.     Because Defendant extensively marketed Nest as an energy and cost saving device, Defendant knew at the time it sold Nest to Plaintiff and the Class that the Plaintiff and the Class intended to use Nest for that particular purpose.

96.     Plaintiff and the Class members relied on Defendant's skill and judgment to furnish goods suitable for managing "half your home's energy bill" and for energy and cost savings. Plaintiff and Class members purchased Nest Thermostats in reliance upon Defendant's implied warranties.

97.     At the time that the Nest Thermostats were sold, Defendant knew or had reason to know that Plaintiff and Class members were relying on Defendant's skill and judgment to select or furnish a product capable of operating as an energy and cost saving device.

98.     The Nest Thermostats were not altered by Plaintiff or Class members.

99.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the products on the same terms if the true facts were known concerning Nest Thermostats' design; (b) they paid a price premium for the products due to Defendant's promises that the Nest Thermostats were capable of delivering energy and cost savings; and (c) they did not receive the promised energy-cost savings.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seeks judgment against Defendant as follows:

a.   For an order certifying a nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

b.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff, and the nationwide Class on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper;

h.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees, and expenses;

i.   Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.   For such other and further relief as the Court may deem proper.

# JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: March 25, 2014

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____ */s/ Annick M. Persinger* _____
Annick M. Persinger

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: scott@bursor.com
        ltfisher@bursor.com
        apersinger@bursor.com
        ykrivoshey@bursor.com

*Attorneys for Plaintiff*

1     **<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

2     I, Justin Darisse, declare as follows:

3        1.    I am a plaintiff in this action. I have personal knowledge of the facts stated herein

4 and, if called as a witness, I could and would testify competently thereto.

5        2.    The complaint filed in this action is filed in the proper place because, as shown on

6 the Nest website and elsewhere, Defendant Nest Labs, Inc. ("Nest Labs") is headquartered and has

7 its principal place of business in this District at 900 Hansen Way, Palo Alto, California 94304.

8 Nest Labs also conducts substantial business in this District.

9        3.    I purchased the Nest Learning Thermostat for use in my household. I purchased the

10 product after I reviewed Nest Labs' marketing material and representations online, such as on the

11 Nest website, including that the Nest Learning Thermostat provides energy and cost savings, as

12 well as accurate temperature readings. I also read and relied on Nest Labs' representations found

13 on the packaging before installing the Nest Learning Thermostat. Nest Labs' marketing of the

14 Nest Learning Thermostat was a substantial factor influencing my decision to purchase the product.

15 I would not have purchased the Nest Learning Thermostat had I known that the product would not

16 provide accurate temperature readings, or energy and cost savings.

17

18    I declare under the penalty of perjury under the laws of the State of California that the

19 foregoing is true and correct, executed on March 24, 2014 at Gaithersburg, Maryland.

20

21

22

23                            JUSTIN DARISSE

24

25

26

27

28

EXHIBIT A

# BURSOR & FISHER
P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

ANNICK M. PERSINGER
Tel: 925.300.4455
Fax: 925.407.2700
apersinger@bursor.com

February 5, 2014

***Via Certified Mail - Return Receipt Requested***

NEST LABS INTERNATIONAL, INC.
900 Hansen Way
Palo Alto, CA 94304

*Re:    Demand Letter Pursuant to California Civil Code § 1782,*
*Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my client, Justin Darisse, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, and sale of the Nest Thermostat ("Nest"). Your conduct with respect to the promotion and marketing of Nest is false and misleading. Such conduct includes, but is not limited to, misrepresenting in advertising that Nest will "lower your heating and cooling bills up to 20%," and will "automatically lower air-conditioning costs up to 30%." Your representation that "Nest uses multiple temperature sensors to determine the ambient temperature with a high degree of accuracy" is also false and misleading because Nest's temperature reading is from two to ten degrees higher than the actual ambient temperature in the surrounding room. As a result of the defects with Nest's temperature reading, Nest purchasers received an ineffective product and do not experience the advertised energy savings.

Mr. Darisse purchased Nest Thermostat 2nd Generation based on representations on the label and in other marketing and advertising material that state that the product would accurately determine ambient temperature and would lower energy costs. His use of the Nest Thermostat has not resulted in energy savings. His Nest does not accurately determine ambient temperature. Mr. Darisse would not have purchased Nest had he known that the product is ineffective at reading temperature or providing energy savings. Mr. Darisse is acting on behalf of a class defined as all persons in the United States who purchased a Nest Thermostat (hereafter, the "Class").

By selling Nest based on affirmative representations that it accurately reads ambient temperature, and reduces energy costs, you have violated numerous provisions of California law, including but not limited to Cal. Com. Code §§ 2-313 and 2-314.

We hereby demand that you immediately make full restitution to all purchasers of Nest of all purchase money obtained from the sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the design, development and manufacture of Nest;

2. All documents concerning defects or issues with Nest related to inaccurate temperature readings;

3. All documents concerning the advertisement, marketing, or sale of Nest; and

4. All communications with customers concerning complaints or comments concerning Nest.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Annick M. Persinger