**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: scott@bursor.com
ltfisher@bursor.com
apersinger@bursor.com
ykrivoshey@bursor.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
1101 Market St., Suite 2650
Philadelphia, Pennsylvania 19107
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

*Attorneys for Plaintiffs*
[additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE NEST LABS LITIGATION

Case No. 3:14-cv-01363-BLF

**PLAINTIFFS' MOTION TO APPOINT INTERIM CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3); MEMORANDUM OF LAW IN SUPPORT**

Date: September 4, 2014
Time: 9:00 a.m.
Courtroom 3, 5th Floor
The Honorable Beth Labson Freeman

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday September 4, 2014 at 9:00 a.m. or as soon thereafter as counsel may be heard in the above captioned Court, located at 280 South 1st Street, San Jose, CA 95113, in the courtroom of Judge Beth Labson Freeman, Plaintiffs Justin Darisse and Joshua Beloff hereby move for an order appointing their counsel Bursor & Fisher, P.A. and Cafferty Clobes Meriwether & Sprengel LLP as interim class counsel.

The motion to appoint interim class counsel is made pursuant to Federal Rule of Civil Procedure 23(g)(3) on the grounds that appointing interim class counsel is in the best interests of the proposed class and would allow for efficient progression toward class certification and trial. The motion is based on this notice, the memorandum of law, the declarations of Annick M. Persinger and Bryan L. Clobes, the pleadings and papers on file in this action and such additional evidence and argument as may be presented at or prior to the hearing on the motion.

Dated: July 2, 2014

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Annick M. Persinger</u>*
Annick M. Persinger

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
E-Mail: scott@bursor.com
ltfisher@bursor.com
apersinger@bursor.com
ykrivoshey@bursor.com

*Attorneys for Plaintiff Justin Darisse*

Dated: July 2, 2014

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**

By: *<u>/s/ Bryan L. Clobes</u>*
Bryan L. Clobes

Bryan L. Clobes
1101 Market St., Suite 2650
Philadelphia, Pennsylvania 19107
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Daniel O. Herrera
Christopher Sanchez
30 N. LaSalle, Suite 3200
Chicago, Illinois 60602
Telephone: (312) 782-4880
Email: dherrera@caffertyclobes.com
csanchez@caffertyclobes.com

**FINKELSTEIN THOMPSON LLP**
Rosemary M. Rivas (State Bar No. 209147)
505 Montgomery Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 398-8700
Email: rrivas@finkelsteinthompson.com

*Attorneys for Plaintiff Joshua Beloff*

# TABLE OF CONTENTS

**PAGE(S)**

I. MEMORANDUM OF LAW ... 1

II. FACTUAL BACKGROUND ... 1

III. PROCEDURAL BACKGROUND ... 2

IV. LEGAL STANDARD ... 3

V. THE COURT SHOULD APPOINT BURSOR & FISHER, AND CAFFERTY CLOBES AS CO-LEAD INTERIM CLASS COUNSEL ... 4

A. Proposed Interim Class Counsel's Identification and Investigation of the Claims ... 4

B. Proposed Interim Class Counsel's Coordination and Organizational Efforts ... 7

C. The Proposed Leadership Structure Is Supported by the Size, Nature, and Demands of This Litigation ... 7

D. Proposed Interim Class Counsel's Experience in Handling Class Actions and Other Complex Litigation ... 8

1. Bursor & Fisher's Experience ... 8

2. Cafferty Clobes Meriwether & Sprengel's Experience ... 10

E. Proposed Co-Lead Interim Class Counsel's Knowledge of the Applicable Law ... 13

F. Proposed Co-Lead Interim Class Counsel Will Commit Significant Resources to Representing the Class ... 13

VI. CONCLUSION ... 14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Hill v. The Tribune Co.*,
2005 WL 3299144 (N.D. Ill Oct. 13, 2005) .......... 4

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006) .......... 4

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 3

*Parkinson v. Hyundai Motor Am.*,
2006 WL 2289801 (C.D. Cal. Aug. 7, 2006) .......... 4

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) .......... 3

**RULES**

Fed. R. Civ. P. 23(c)(1) .......... 6

**TREATISES**

5 J. Moore's Federal Practice. ¶ 402.02[2] (1985) .......... 3

Manual for Complex Litigation, 4th Ed. (2004) .......... 3, 8

Moore's Federal Practice § 23.120(3)(a) (3d. Ed. 2007) .......... 4

## I. MEMORANDUM OF LAW

Plaintiffs Justin Darisse and Joshua Beloff ("Plaintiffs") move this Court for an order pursuant to Fed. R. Civ. P. 23(g)(3) to appoint Bursor & Fisher and Cafferty Clobes Meriwether & Sprengel LLP ("Cafferty Clobes") as co-lead interim class counsel.

Appointment of interim class counsel will create one unified voice for Plaintiffs and all putative class members, and will promote efficiency and conserve judicial resources. Indeed, appointment of interim class counsel is necessary to protect the interests of the putative class and ensure efficient progress toward class certification and trial. In addition, counsel for Plaintiffs have the experience, knowledge and resources necessary to effectively handle this litigation and have led the investigation and prosecution of the claims in this case.

For all of these reasons, and as detailed more fully below, Plaintiffs respectfully request that the Court grant their motion to appoint Bursor & Fisher and Cafferty Clobes as co-lead interim class counsel.

## II. FACTUAL BACKGROUND

Plaintiffs bring this consolidated action on behalf of purchasers of the Nest Learning Thermostat ("Nest") against Defendant for using false and misleading advertising to promote Nest. *See generally* Consolidated Class Action Complaint, Dkt. No. 28. In 2011, Defendant launched Nest, a sleek "new generation" wireless thermostat – touting it as a self-programming device that can be controlled from smartphones and tablets. *Id.* at ¶ 1. Defendant's marketing conveys a simple message: Nest saves money. *See, e.g.*, *id.* at ¶ 22.

Defendant promises that Nest "automatically saves energy," and decreases utility bills. *Id.* at ¶¶ 22-46. In fact, Nest *increases* energy use because, contrary to Defendant's representation that Nest determines ambient temperature with a high degree of accuracy, customer reports and Defendant's own statements show that Nest cannot correctly gauge ambient temperature. *Id.* at ¶¶ 47-52. The very features that Defendant claims set Nest apart from other thermostats, such as Nest's WiFi connectivity, bright LCD screen 320x320px display, built in rechargeable lithium ion battery, multiple-sensors, and sensor window, cause Nest to heat up and render it incapable of accurately gauging the temperature in the surrounding room. *Id.* at ¶ 48. Once it heats up, Nest

determines that the temperature is two to ten degrees warmer than the actual temperature in the room. *See e.g.*, *id.* at ¶ 47. Consequently, Nest causes increased energy use rather than providing users with the benefit of the advertised energy savings. *Id.* As Defendant explains: "changing the temp just one degree can save up to 5% on your energy use." *Id.* Thus, according to Defendant's reasoning, an inaccurate temperature reading of two to ten degrees could increase energy use from 10% to 50%. *Id.*

After reviewing Defendant's marketing material and representations that Nest provides energy and cost savings as well as accurate temperature readings, Plaintiffs purchased Nest at a substantial price premium compared to traditional thermostats. *Id.* at ¶¶ 9-10. Instead of realizing energy and cost savings, Plaintiffs have incurred higher energy costs. *Id.* Accordingly, Plaintiffs bring this consolidated action to seek relief for themselves and for a proposed nationwide class of Nest purchasers.

**III. PROCEDURAL BACKGROUND**

*Darisse* was filed on March 24, 2014, and served on March 31, 2014. On April 21, 2014, Nest Labs Inc. and Darisse filed a stipulation extending the time for Defendant to answer or otherwise respond to Plaintiff's complaint to June 5, 2014. On April 30, 2014, the parties further stipulated to continue the initial case management conference. On May 5, 2014, the Court set the initial case management conference for June 19, 2014 at 1:30 p.m. with the parties' joint case management statement due by June 12, 2014.

*Beloff* was filed on April 11, 2014. On April 29, 2014, Beloff filed an administrative motion to consider whether his action should be related to *Darisse*. On May 16, 2014, the Court entered an order relating the two actions and directing that both case numbers bear Judge Freeman's initials.

On June 6, 2014, the parties filed a stipulation to consolidate *Darisse* and *Beloff*, to permit the filing of a consolidated complaint, and to set a consolidated case management conference. Dkt. No. 23. On June 9, 2014, the Court entered an order consolidating the related cases, permitting filing of a consolidated complaint, and setting a consolidated case management conference on

October 16, 2014. On June 24, 2014, Plaintiffs filed their Consolidated Class Action Complaint. Dkt. No. 28.

## IV. LEGAL STANDARD

This Court possesses broad inherent authority "to control the disposition of the case[s] on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Pursuant to Fed. R. Civ. P. 23(g)(3), a "court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." It is well-established that appointment of lead counsel is appropriate to promote efficiency in overlapping or duplicative class actions. *See 5 J. Moore's Federal Practice*. ¶ 402.02[2] (1985) ("it is … within the court's discretion to appoint general or lead counsel whose function is to supervise and coordinate the conduct of the consolidated cases." (citing *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977)).

The Manual for Complex Litigation ("Manual") recognizes the benefits of creating an appropriate leadership structure of plaintiffs' counsel in complex litigations. *See Manual*, 4th Ed. (2004), § 10.22. The Manual advises that appointment of interim class counsel before certification of a class is especially appropriate when "there are a number of overlapping, duplicative, or competing suits pending … and some or all of those suits may be consolidated." *Id.* at § 21.11. In such cases, "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* As the Manual states, "[i]nstituting special procedures for coordination of counsel early in the litigation will help avoid … problems [of unnecessary costs and duplication]." *Id.* Indeed, in considering whether appointment of lead counsel is appropriate "[t]he most important [factor] is achieving efficiency and economy without jeopardizing fairness to the parties." *Id.* at § 10.221.

Moreover, the Advisory Committee Notes (hereafter "Notes") accompanying Rule 23 contemplate "that in many cases the need to progress toward the certification determination may *require* designation of interim counsel." Fed. R. Civ. P. 23, Advisory Committee Notes (2003)

(emphasis added). Accordingly, although Rule 23(g)(3) states that a court "may" appoint interim counsel, courts have relied on the Notes to hold that interim counsel *should* be appointed when necessary to protect the interests of the putative class. *See, e.g.*, *Parkinson v. Hyundai Motor Am.*, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006).

The considerations set forth in Rule 23(g)(1), which govern appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (citing *Parkinson* WL 2289801, at *2; *Hill v. The Tribune Co.*, 2005 WL 3299144 at *3-4 (N.D. Ill Oct. 13, 2005)). Rule 23(g)(1)(A) provides, in relevant part, that in appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1). As detailed below, each of these considerations support the designation of Bursor & Fisher, and Cafferty Clobes as co-lead interim class counsel.

## V. THE COURT SHOULD APPOINT BURSOR & FISHER, AND CAFFERTY CLOBES AS CO-LEAD INTERIM CLASS COUNSEL

### A. Proposed Interim Class Counsel's Identification and Investigation of the Claims

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. **All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.**

Moore's Federal Practice § 23.120(3)(a) (3d. Ed. 2007) (emphasis added).

Counsel's work in identifying and investigating the claims in this case demonstrates that they are in a position to fairly and adequately represent the proposed class. For example, Bursor & Fisher has performed the following work thus far:

(a) conducted an extensive investigation into the potential claims arising from Defendant's false and misleading marketing of the defective thermostats, Persinger Decl. ¶ 10;

(b) reviewed and documented Defendant's representations regarding Nest's accuracy and energy and cost savings online, in print and on product packaging since June of 2013, *id.*;

(c) analyzed the efficacy of Nest's features, such as the Nest Leaf feature and Nest's multiple energy sensors, on saving energy and costs, *id.*;

(d) corresponded with and interviewed consumers regarding their experiences with Nest, the accuracy of Nest's temperature reading, and Nest's impact on utility bills, *id.*;

(e) reviewed hundreds of customer reports and reviews regarding the first and second generation Nest thermostat, *id.*;

(f) examined Defendant's responses to customer reports of incorrect temperature readings, including Nest Support's article "Why does the temperature Nest detects seem different than my old thermostat," *id.*;

(g) studied the terms and conditions and refund policies established by Defendant, *id.*;

(h) analyzed the pricing, features and accuracy of traditional thermostats, *id.*;

(i) considered the National Advertising Division's recommendations to Defendant concerning Defendant's representations about Nest, *id.*;

(j) drafted a Consumer Legal Remedies Act demand letter to provide Defendant the opportunity to rectify the problems with Nest's temperature reading and the false representations about Nest's energy and cost saving capabilities, *id.*; and

(k) drafted the *Darisse* complaint.

Cafferty Clobes has also made significant investigatory and analytical efforts. For example, Cafferty Clobes has:

(a) conducted a thorough factual investigation into the manufacturing and design defects that render Nest more inaccurate than traditional thermostats and that make Nest unsuitable for its intended purpose, Clobes Decl. ¶ 4;

(b) examined Nest's hardware, including Nest's display, PCB circuit board and rotating ring, as well as its operating system, *id.*;

(c) researched the legal claims arising from Nest's defects and Defendant's false and misleading advertising campaign, *id.* at ¶ 5;

(d) investigated the role that Defendant's representations about Nest play in consumer purchasing decisions, *id.*;

(e) researched Nest's features and the effect of those features on energy and cost savings, *id.* at ¶ 4;

(f) communicated with customers regarding their experiences with Nest, *id.* at ¶ 5;

(g) retained local counsel in the Northern District of California, *id.*; and

(h) investigated, researched and drafted the *Beloff* complaint, *id.*.

The extensive efforts of both firms led to the filing of two comprehensive complaints which demonstrate the quality and magnitude of the pre-suit investigation done by Plaintiffs' counsel. The complaints explain in detail Defendant's elaborate, false and deceptive advertising campaign, as well as Nest's defects. This is precisely the type of work that the Advisory Committee Notes to Rule 23 state that the Court should consider in appointing interim class counsel. Especially when the investigations and resources of both firms are combined, Bursor & Fisher and Cafferty Clobes are best-positioned to effectively represent Plaintiffs and the putative class.

Additionally, the Notes contemplate that the appointment of interim class counsel may be necessary to conduct pre-certification discovery prior to a decision to grant or deny class certification pursuant to Fed. R. Civ. P. 23(c)(1), inasmuch as "some discovery is often necessary

for that determination." *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003). The Notes further state, "[o]rdinarily such work is handled by the lawyer who filed the action." *Id.*

Here, a significant amount of discovery and related motion practice is expected to take place before a motion for class certification is filed. *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003) (noting that interim class counsel may be necessary to "make or respond to motions before certification"). Furthermore, given the breadth of Defendant's advertising campaign and the technical information related to Nest's defects, discovery in this matter may be complex and will likely require negotiation and coordination with opposing counsel prior to class certification. Proposed interim class counsel's thorough investigation into the claims and depth of relevant experience will enable them to adequately handle this discovery and pre-certification motion practice.

**B. Proposed Interim Class Counsel's Coordination and Organizational Efforts**

In an effort to streamline consolidation of the related actions, and continue to move the actions towards class certification, trial and resolution, Bursor & Fisher and Cafferty Clobes have been coordinating their prosecution of the related actions. Persinger Decl. ¶ 11; Clobes Decl. ¶ 8. This collaboration has not only led to the proposed leadership structure, but has also resulted in better organizing the firms' work on behalf of the class and prevented duplication of effort. *Id.* For example, Plaintiffs have stipulated to the consolidation of the related actions and have worked together to file a consolidated amended complaint. *Id.* Proposed interim class counsel's demonstrated ability to work together efficiently and effectively for the benefit of Plaintiffs and the class weighs in favor of giving effect to Plaintiffs' proposed leadership structure.

**C. The Proposed Leadership Structure Is Supported by the Size, Nature, and Demands of This Litigation.**

The complexities and demands of this litigation warrant adopting a co-lead interim class counsel structure. Given the complex technical issues related to Nest's functionality, the likely need for expert opinions, the breadth of Defendant's advertising campaign, and the size of the proposed nationwide class of Nest purchasers, Plaintiffs believe that a two firm co-lead counsel

structure is most appropriate for this litigation. Further, the Manual advises that appoint of interim class counsel before certification is appropriate where, as here, there are overlapping or duplicative suits pending that may be consolidated. *See Manual*, 4th Ed. (2004), § 21.11. As the Manual instructs, designation of interim class counsel in cases like this one will clarify responsibility for making and responding to motions, conducting pre-certification discovery, and protecting the interests of the class. *See id.*

The two firms are committed to working cooperatively to prosecute a consolidated action and to distributing work between their two firms. Movants propose that co-lead interim class counsel have the sole authority over the following matters: (a) convening and conducting meetings of Plaintiffs' counsel, including to update and consult with all counsel who are signatories to the complaints regarding the administration and prosecution of the cases; (b) initiating, responding to, scheduling, briefing and arguing all motions; (c) conducting all discovery proceedings; (d) assigning and staffing work; (e) collecting time and expense reports on a periodic basis; (f) identifying, selecting and retaining experts; (g) designating attorneys to appear at hearings and conferences; (h) negotiating settlement; (i) tracking, allocating, and distributing attorney's fees and reimbursement of costs; and (j) all other matters concerning the prosecution of the cases, including strategy, allocating work and staffing.

### D. Proposed Interim Class Counsel's Experience in Handling Class Actions and Other Complex Litigation

The second factor the Court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Bursor & Fisher, and Cafferty Clobes have substantial experience in complex consumer class action.

#### 1. Bursor & Fisher's Experience

Bursor & Fisher has substantial experience handling class actions and other complex litigation. *See* Persinger Decl., ¶¶ 3-9, Exhibit A (Bursor & Fisher's Firm Resume). The firm's attorneys have represented both plaintiffs and defendants in more than 100 class action lawsuits in state and federal courts throughout the United States. *Id.* at ¶ 3. For example, the attorneys of

Bursor & Fisher have been appointed by courts to represent purchasers of Avacor, children's homeopathic cold and flu remedies, Xenadrine, LG refrigerators, and Crest toothpaste products, as well as customers of Verizon Wireless, AT&T Wireless, Cingular Wireless, Sprint, T-Mobile, Michaels Stores, and CitiMortgage. *Id.*

Notably, on November 21, 2011, Bursor & Fisher obtained final approval for a $23 million nationwide consumer class settlement in *O'Brien v. LG Electronics*, Case No. 10-cv-3733 (D.N.J.). *Id.* at ¶ 4. Also, on December 9, 2011, Bursor & Fisher obtained class certification and was appointed class counsel in *In re Pacific Bell Late Fee Litig.*, Case No. MSC 10-00840 (Cal. Super. Ct., Contra Costa Cnty.), representing a class of three million California residents who paid Late Payment Charges imposed by PacBell for wireline telephone services. *Id.* at ¶ 5. Last year, Bursor & Fisher negotiated and earned preliminary approval for a $38 million nationwide class settlement in that case. *Id.*

Additionally, on March 3, 2012, Judge Yvonne Gonzalez Rogers appointed Bursor & Fisher as interim class counsel for a proposed class of purchasers of Sensa weight loss products over a competing Plaintiff's firm that also sought appointment in *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012). *Id.* at ¶ 6. On November 8, 2013, Bursor & Fisher was appointed co-lead counsel in *In re 5-Hour Energy Marketing and Sales Practices Litig.* (C.D. Cal.), an MDL proceeding that consists of over a dozen cases. *Id.* at ¶ 7. Most recently, on April 9, 2014, Chief Judge King in the Central District appointed Bursor & Fisher co-lead class counsel for a certified nationwide class of purchasers of children's homeopathic cold and flu remedies in *Forcellati v. Hyland's, Inc.*, (C.D. Cal. Apr. 9, 2014). *Id.* at ¶ 8.

The attorneys of Bursor & Fisher have been appointed lead or co-lead class counsel to the three largest classes ever certified. *Id.* at ¶ 3. They also negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and second largest classes ever certified, respectively). *Id.* These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. *Id.*

The lawyers of Bursor & Fisher also have an active civil trial practice, having won multi-million dollar verdicts or recoveries in four of four civil jury trials since 2008. *Id.* For example, while serving as lead trial counsel in *Thomas v. Global Vision Products, Inc.*, Bursor & Fisher obtained a $50 million jury verdict in favor of the plaintiff and the class on a CLRA claim. *Id.* In another example, *Ayyad v. Sprint Spectrum, L.P.*, Bursor & Fisher obtained a $299 million trial verdict for a class of Sprint customers on a claim for unjust enrichment. *Id.*

**2. <u>Cafferty Clobes Meriwether & Sprengel's Experience</u>**

For over two decades, Cafferty Clobes has served as lead or co-lead counsel in scores of state and federal complex, class actions, while recovering billions of dollars for their clients and class members. *See* Clobes Decl. ¶¶ 3, 9-16, Exhibit A thereto (Cafferty Clobes Firm Resume).

Within this district, Cafferty Clobes has served as lead or co-lead counsel in a number of cases. Most recently, Cafferty Clobes was appointed co-lead counsel in *Kamakahi v. American Society for Reproductive Medicine*, No. 4:11-CV-01781-JCS (N.D. Cal.) ("*Kamakahi*"). Plaintiffs in *Kamakahi* have brought antitrust claims on behalf of a nationwide class of egg donors who claim the nation's largest associations of fertility clinics have conspired to restrain the market value of human eggs. On March 14, 2012, Judge Sandra Brown Armstrong appointed Cafferty Clobes – as well as local counsel of record in this matter, Finkelstein Thompson LLP – interim class counsel. Clobes Decl. ¶ 10. Judge Armstrong also denied Defendants' motion to dismiss. *See Kamakahi*, Dkt. No. 63 (Mar. 29, 2013). In that case, Plaintiffs have most recently moved for class certification and briefing is almost complete. Clobes Decl. ¶ 10.

In addition, Cafferty Clobes served in a management role in *In re Apple iPhone/iPod Warranty Litig.*, No. 10-cv-01610 (N.D. Cal. 2010), in which the firm represents purchasers of iPhones and iPods who were improperly denied warranty service. Along with its co-counsel, Cafferty Clobes helped negotiate a $53 million settlement that will result in individual recoveries that *exceed* the average class member out-of-pocket loss. Clobes Decl. ¶ 11. On May 8, 2014, the Honorable Richard Seeborg granted final approval to the proposed settlement. *Id.*.

Outside this district, Cafferty Clobes has served as lead counsel or in a leadership role in wide variety of antitrust, consumer and other commercial class actions that have generated billions of dollars in recoveries for their clients and class members. For example, in *In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663 (D.N.J.), the court appointed Cafferty Clobes as one of two co-lead counsel. Clobes Decl. ¶ 12. That multidistrict class litigation involved dozens of national insurance company and insurance broker defendants that conspired to allocate customers and policies among preferred insurers in a complicated, national scheme to inflate premiums at the expense of policyholders. Despite the defendants' considerable efforts, the case overcame several rounds of motions to dismiss, as well as a resulting appeal and remand for further proceedings. Cafferty Clobes ultimately negotiated and secured settlements totaling well over $300 million, and successfully defended final approval of several settlements that resulted in a lengthy Third Circuit decision. *See* 579 F.3d 241 (3d Cir. 2009).

In awarding attorneys' fees, then Chief Judge Brown noted that "[c]lass Counsel are highly skilled attorneys[.]" *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 1652303, at *6 (D.N.J. June 5, 2007). Further, Judge Brown "assessed the qualification, experience and ability of Plaintiffs Class Co-Lead Counsel on [multiple] occasions, and each time determined that those attorneys are clearly 'well qualified and experienced class action attorneys who have been' involved in similar . . . litigation around the country.'" *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 542227, at *14 (D.N.J. Feb. 16, 2007) (quoting *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231,250 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 2589950, at *11 (D.N.J. Aug. 31, 2007). Most recently, in the same case, Judge Claire Cecchi described Cafferty Clobes as "clearly well-qualified and experienced class action attorneys who have been involved in similar litigation around the country." *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2012 WL 1071240, *11 (D.N.J. Mar. 30, 2012) (internal quotations omitted).

As a result of its history of successfully prosecuting antitrust actions, Cafferty Clobes has continued to play a prominent role in high-profile actions. For instance, in

*VisaCheck/MasterMoney Antitrust Litigation*, No. 96-5238 (E.D.N.Y.), Cafferty Clobes and other firms successfully challenged the defendants' practice of forcing retailers to accept all of their branded cards as a condition of acceptance of their credit cards, and secured a settlement of over $3.3 billion, plus widespread reforms and injunctive relief. Clobes Decl. ¶ 12. Similarly, the firm has played a prominent role in *In re NCAA Student Athlete Name and Likeness Licensing Litigation.*, No. 4:09-cv-01967-CW (N.D. Cal.), including coordinating discovery from schools, conferences and television networks., and coordinating and defending the many plaintiffs' depositions. Clobes Decl. ¶ 12.

By way of further example, Cafferty Clobes serves on the plaintiffs' executive committee representing a large number of classes of auto purchasers in *In re Automotive Parts Antitrust Litig*., MDL No. 2311 (E.D. Mich. 2011). That matter has been the subject of significant attention from the press and otherwise as foreign and domestic defendants continue to plead guilty to conspiring to fix the price of automotive components used in some of the nation's most popular cars. Clobes. Decl. ¶ 14.

Cafferty Clobes also has led various complex consumer class cases. For instance, in *In re Midway Moving & Storage, Inc.'s Charges to Residential Customers*, No. 03 CH 16091 (Cir. Ct. Cook Cty., Ill. 2003), a class action alleging violations of the Illinois Consumer Fraud Act against Illinois' largest moving company whose final moving charges exceeded their written estimates, the court concluded that Cafferty Clobes is "highly experienced in complex and class action litigation, vigorously prosecuted the Class' claims, and achieved an excellent Settlement for the Class under which Class members will receive 100% of their alleged damages." Clobes Decl. ¶ 12. Likewise, in *In re New Motor Vehicles Canadian Export Antitrust Litig*., MDL No. 1532 (D. Me.), Cafferty Clobes was appointed co-lead class counsel and successfully secured tens of millions of dollars in settlements with various auto manufacturers and associational defendants. Clobes. Decl. ¶ 13.

In addition, Cafferty Clobes currently represents plaintiffs and proposed classes in numerous consumer protection cases proceeding in federal courts across the country, including: *Hadley v. Chrysler Group, LLC*, No. 13-cv-13665 (E.D. Mich. 2013) (proposed class of Louisiana

Jeep Cherokee owners whose vehicles contain defective airbags); *Fisher v. Honda North America, Inc.*, No. 13-cv-9285 (C.D. Cal. 2013) and *Davitt v. Honda North America, Inc.*, No. 13-cv-00381 (D.N.J. 2013) (proposed classes alleging that vehicles contain defective door locks); *In re: Hyundai and Kia Fuel Economy Litig.*, MDL No. 2424 (C.D. Cal. 2013) (alleging vehicle manufacturers overstated MPG figures); and *Meyers v. Garmin Int'l, Inc.*, No. 13-CV-2416 (D. Kan. 2013) (a proposed nationwide class action alleging that defendant's products use defective batteries prone to early failure). Clobes Decl. ¶ 15.

Finally, Cafferty Clobes has three offices located throughout the country and numerous experienced, well-qualified attorneys and support staff available to work on this case. As detailed in the supporting declaration of Mr. Clobes and the firm resume attached thereto, Mr. Clobes and the firm each have more than twenty years of experience leading, conducting and coordinating complex consumer and commercial class actions. For these reasons, Cafferty Clobes is more than qualified to help lead this litigation. Clobes Decl. ¶ 16.

**E. Proposed Co-Lead Interim Class Counsel's Knowledge of the Applicable Law**

Proposed interim class counsel are also knowledgeable about the law applicable to the claims herein, as demonstrated by their experience litigating other multi-state class actions, and in particular complex consumer fraud class actions. As set forth above, both firms are very familiar with litigating large-scale consumer and complex actions. Additionally, the lawyers at Bursor & Fisher are intimately acquainted with this Court's local rules and procedures. Persinger Decl. ¶ 12.

**F. Proposed Co-Lead Interim Class Counsel Will Commit Significant Resources to Representing the Class**

The final Fed. R. Civ. P. 23(g)(1) factor, which concerns the resources counsel will commit to the cases, also strongly supports appointing proposed interim class counsel. The combined resources of the two law firms will provide significant resources and personnel to this complex class case. The pre-suit investigations conducted by counsel have already demonstrated that counsel have the will and ability to commit the necessary time and resources to assure a strong and supported case. Proposed co-lead interim counsel's resources are not merely financial, but also

include substantial expertise and relevant experience, which were developed in other consumer class action cases and that will greatly benefit the Plaintiffs and the putative class. The ability to draw from this well-developed experience will streamline the litigation. As co-lead interim class counsel, Bursor & Fisher and Cafferty Clobes will continue to commit the same resources and effort to this case as they have committed to their other, successful litigations.

**VI. CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court appoint Bursor & Fisher and Cafferty Clobes Meriwether & Sprengel as co-lead interim class counsel.

Dated: July 2, 2014

**BURSOR & FISHER, P.A.**

By: *\/s/ Annick M. Persinger*
Annick M. Persinger

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
E-Mail: scott@bursor.com
ltfisher@bursor.com
apersinger@bursor.com
ykrivoshey@bursor.com

*Attorneys for Plaintiff Justin Darisse*

Dated: July 2, 2014

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**

By: *\/s/ Bryan L. Clobes*
Bryan L. Clobes

Bryan L. Clobes
1101 Market St., Suite 2650
Philadelphia, Pennsylvania 19107
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Daniel O. Herrera
Christopher Sanchez
30 N. LaSalle, Suite 3200
Chicago, Illinois 60602
Telephone: (312) 782-4880
Email: dherrera@caffertyclobes.com
csanchez@caffertyclobes.com

**FINKELSTEIN THOMPSON LLP**
Rosemary M. Rivas (State Bar No. 209147)
505 Montgomery Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 398-8700
Email: rrivas@finkelsteinthompson.com

*Attorneys for Plaintiff Joshua Beloff*